IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARLOS DAX CREGAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 18 C 4186 |
| v. | ) |
| | ) Judge John Z. Lee |
| RAYMOND PIWNICKI and the | ) |
| CITY OF CHICAGO, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Carlos Dax Cregan filed this lawsuit against Detective Raymond Piwnicki and the City of Chicago ("the City") pursuant to 42 U.S.C. § 1983. Cregan alleges that Defendants violated his rights under the Fourth Amendment, as applied to the states through the Fourteenth Amendment, when he was arrested in October 2015. Piwnicki and the City have each filed a motion to dismiss Cregan's claims. For the reasons stated herein, the motions are granted in part and denied in part.

### **Background**[1]

Cregan alleges that on October 31, 2015, he encountered two individuals he thought he recognized on the corner of 47th Street and Kilpatrick Avenue in Chicago, Illinois. Am. Compl. ¶¶ 7, 11–12, ECF No. 20. Shortly after Cregan stopped to speak with them, Piwnicki approached the group in an unmarked vehicle, identified himself as a police officer, and instructed them to leave the area. *Id.* ¶¶ 13–14.

---

[1] The following facts are taken from Cregan's complaint and are accepted as true at this stage. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (stating that, at the motion-to-dismiss stage, the court "accept[s] as true all well-pleaded facts alleged").

The other two individuals left, and Cregan began walking to his vehicle, which was parked in a nearby alley. *Id.* ¶¶ 8, 15–16. After Cregan got into his vehicle, Piwnicki pulled into the alley behind him, got out of his own vehicle, and "yelled to [Cregan] to 'put his fucking hands up.'" *Id.* ¶¶ 17–18. Piwnicki then arrested Cregan without explanation. *Id.* ¶ 19.

Piwnicki brought Cregan to the police station at 5101 S. Wentworth. *Id.* ¶ 20. There, he interrogated Cregan, asking him for the names of the two unknown individuals and demanding to know where "the guns" were located. *Id.* ¶ 21. Cregan told Piwnicki he had no knowledge of any guns, and that he did not know the names of the two individuals. *Id.* ¶ 22. Piwnicki told him that a gun had been found near the area where he had encountered Cregan, and that if Cregan did not provide the names of the other two individuals, "the gun would 'belong' to [him]." *Id.* ¶ 23. Cregan again denied any knowledge. *Id.* ¶ 24.

Shortly thereafter, Cregan was charged with unlawful possession of a firearm and was taken to the Cook County Jail, where he remained for approximately eight months before being released on bond. *Id.* ¶¶ 25–26. Later, as he prepared for trial, Cregan "learned that . . . Piwnicki [had] falsely claimed in his [a]rrest [r]eport that he [had seen] [Cregan] hide a gun under the wheel of a parked car" prior to his arrest. *Id.* ¶¶ 27–28. Cregan's case proceeded to trial in April 2018, and he was found not guilty. *Id.* ¶ 29.

Plaintiff brings Fourth Amendment § 1983 claims for false arrest and false imprisonment against Piwnicki (Count I), as well as a claim against the City under *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 691 (1978) (Count II).

**Legal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**Analysis**

**I. Timeliness of Cregan's Claims**

Piwnicki and the City (collectively, "Defendants") argue that Cregan's claims are time-barred, specifically focusing on his claims against Piwnicki. Although a complaint "need not anticipate and overcome affirmative defenses, such as the statute

3

of limitations," a district court may dismiss a claim under Rule 12(b)(6) if the complaint reveals that the claim is unquestionably untimely. *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017) (quoting *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009)); *see also Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) ("Although the statute of limitations is ordinarily an affirmative defense . . . a district court may dismiss . . . [a claim] that is *indisputably* time-barred." (emphasis added)). That is, a plaintiff may "plead himself out of court" if his complaint includes factual allegations that definitively establish that he is not entitled to relief as a matter of law. *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015).

In Illinois, the statute of limitations for § 1983 claims is two years. *See Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). While state law determines the length of the limitations period for a § 1983 claim, federal law determines the date of accrual of the cause of action. *Id.*

Section 1983 claims accrue "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Id.* (quoting *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992)); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[A]ccrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." (internal quotation marks and alteration marks omitted)).

The sides here disagree as to when Cregan's claims against Piwnicki accrued— Defendants contend that the claims accrued when Cregan was released on bond. But,

4

it is in fact possible that Cregan's pre-trial release did not cause his claims against Piwnicki to accrue.² A closer look at Cregan's claims against Piwnicki helps explain why.

First, the focus of Cregan's claims, listed as "False Arrest and Imprisonment," is his loss of liberty absent probable cause, rather than any injury he suffered during or pre-arrest. *See* Am. Compl. ¶ 1 ("This action seeks to enforce Plaintiff's 4th Amendment Rights against unlawful seizures . . . . Plaintiff was arrested without probable cause on October 31, 2015 and charged with unlawful possession of a firearm."); *id.* ¶ 31 ("Defendant Piwnicki arrested the Plaintiff without the probable cause to believe he committed a crime and resulted in the Plaintiff's wrongful arrest and imprisonment."); *Cf. Knox v. Curtis*, 771 F. App'x 656, 658 (7th Cir. 2019) (concluding that, though plaintiff's complaint alleged that "there was no probable cause for [*the*] *arrest*," his allegations as a whole challenged "the propriety of his time in custody" rather than "injury independent of time spent in custody" (emphasis added)); *Manuel v. City of Joliet* ("*Manuel II*"), 903 F.3d 667, 669–70 (7th Cir. 2018) (describing invasion of privacy during an unauthorized search, and excessive force applied during an arrest, as pre-custody violations, versus injury caused by "the absence of probable cause that would justify [a] detention"). And Fourth Amendment claims that challenge "the propriety of [plaintiff's] time in custody" accrue at the time

---

²     Defendants contend that Cregan was released on bond earlier than his complaint asserts and urge the Court to take judicial notice of documents allegedly establishing as much. The Court need not address this point, however. As explained *infra*, regardless of Cregan's specific pre-trial release date, it is not "indisputably" clear, *Small*, 398 F.3d at 898, that the limitations period has run on Cregan's claims against Piwnicki.

5

that the individual's detention, or seizure, ceases. *Manuel II*, 903 F.3d at 669–70. Moreover, although Cregan was released on bond, his pretrial release likely was subject to certain conditions, some of which may have so restricted his liberty to constitute a seizure for Fourth Amendment purposes. *See Mitchell v. City of Elgin*, 912 F.3d 1012, 1017 (7th Cir. 2019) (leaving open the possibility that some conditions of pretrial release may pose such significant restrictions on liberty that they should be deemed seizures and thus continued detention); *see also Knox*, 771 F. App'x at 658 (describing *Mitchell* as "noting [that the Seventh Circuit] ha[s] yet to decide whether pretrial-release conditions constitute a Fourth Amendment seizure.").

Here, the amended complaint is silent as to the precise nature of those conditions, and the complaint does not conclusively foreclose the possibility that Cregan's claims against Piwnicki may not have accrued until he was acquitted at trial. *Cf. Mitchell*, 912 F.3d at 1017 (stating that the court was not able to determine when the plaintiff's § 1983 unlawful-detention claim accrued because the court "lack[ed] sufficient information about [Plaintiff]'s conditions of release to determine if she remained 'seized' while on pretrial release."). Accordingly, the Court denies Defendants' motion to dismiss Cregan's claims against Piwnicki on limitations grounds.

## II. Failure to State a *Monell* Claim

Defendants further argue that Cregan fails to adequately plead a *Monell* claim against the City. Under *Monell*, state actors may not be held liable for constitutional violations under a *respondeat superior* theory; rather, a plaintiff with a § 1983 claim

6

must show that the constitutional deprivation was committed pursuant to government policy, custom, or practice. *See Waters v. City of Chicago*, 580 F.3d 575, 580 (7th Cir. 2009) (citing *Monell*, 436 U.S. at 694). Accordingly, to state a *Monell* claim, a plaintiff is required to "'plead[] factual content that allows the court to draw the reasonable inference' that the City maintained a policy, custom, or practice" that deprived him of his constitutional rights. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (alteration in original).

The Court agrees with Defendants that Cregan has failed to state a *Monell* claim. Cregan's amended complaint conclusorily and vaguely alleges the existence of various City policies, customs, and practices relating to Piwnicki's alleged conduct, but does not describes those policies, customs, and practices with any particularity or support their existence with anything but purely conclusory statements. *See* Am. Compl. ¶ 38 (alleging, *inter alia*, that the City had "[p]olicies or customs regarding firearms recovered at crime scenes[] and firearms taken into police custody, which would result in the wrongful prosecution of suspects," and also that the City "[f]ail[ed] . . . to adequately train or supervise Law Enforcement Officers such that it was highly predictable that false arrest and imprisonment would occur.").

Such conclusory allegations against the City lack the "factual content to 'nudg[e]' [Cregan's] claim . . . 'across the line from conceivable to plausible.'" *McCauley*, 671 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 683); *see Gallagher v. O'Connor*, 664 F. App'x 565, 569 (7th Cir. 2016) (concluding that the plaintiff failed to adequately allege the existence of a city custom for *Monell* purposes where the

7

complaint "merely describe[d] the factual circumstances of [the] arrest and tack[ed] on boilerplate allegations that trace the legal requirements of a *Monell* claim.").

Allowing Cregan's *Monell* claim to go forward in the current form "would be tantamount to allowing suit to be filed on a *respondeat superior* basis. Plaintiffs could file claims whenever a police officer abused them, add *Monell* boilerplate allegations, and proceed to discovery in the hope of turning up some evidence to support the 'claims' made." *Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir. 1985). To assert a viable *Monell* claim, Cregan must offer more than he does here.

## Conclusion

For the foregoing reasons, Defendants' motions to dismiss are denied as to Count I of the amended complaint (the claims against Piwnicki), but granted as to Count II of the amended complaint (the *Monell* claim against the City).

**IT IS SO ORDERED.**          **ENTERED: 3/11/20**

                                                                     _____
                                                                     **John Z. Lee**
                                                                     **United States District Judge**